UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

PEGGY A. HALL,

                Plaintiff,

       -v-

KODAK OCCUPATIONAL ACCIDENTAL
DEATH INSURANCE PLAN, et al.,

                Defendants.

DECISION AND ORDER

08-CV-6402 CJS

---

APPEARANCES

For Plaintiff:             R. Scott DeLuca, Esq.
                      Schrader, Israely, DeLuca & Waters LLP
                      2821 Wehrle Drive, Suite 3
                      Williamsville, New York 14221

For Defendants:      Margaret A. Clemens, Esq.
                      Littler Mendelson, P.C.
                      400 Linden Oaks, Suite 110
                      Rochester, New York 14625

INTRODUCTION

This is an action brought pursuant to ERISA, to recover benefits under two employee welfare plans. Now before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6) (Docket No. [#7]). The application is granted.

BACKGROUND

Peggy A. Hall ("Plaintiff") is the widow of William D. Hall ("Mr. Hall"). Mr. Hall was employed by Eastman Kodak ("Kodak") from 1968 until he retired in May 1992. On February 20, 2006, almost fourteen years after his retirement, Mr. Hall died of malignant mesothelioma, caused by his exposure to asbestos while he was employed at Eastman

Kodak.  Plaintiff subsequently applied for benefits under two Kodak  employee welfare

benefit plans:  the Kodak Occupational Accidental Death Insurance Plan ("KOADI" or "the

Accidental Death Plan") and the Kodak Medical Assistance Plan ("KMA" or "the Medical

Assistance Plan").  With regard to the KMA plan, Plaintiff applied for benefits under the

provision concerning "SE7/Survivors," discussed further below.

The KOADI plan pays a specified death benefit for qualifying employees.  KOADI

states that while an employee is a "Workers' Compensation Recipient," he is considered an

employee "for all purposes under the Plan." KOADI Plan § 2.10.  The plan defines covered

injuries, in pertinent part, as follows:

> 7.01 On-the-Job Injuries
>
> The benefits will be payable in the event that an Employee sustains a bodily
> injury in the course of his employment with the Company and, within 1 year of
> the injury, dies as a direct result of the injury.  Even if these conditions are not
> met, the insurance will be paid if death benefits have been determined to be
> payable under a Workers' Compensation Law because of a death resulting
> from an injury within one year of the injury.

([#7-4] at 10).  However, the plan specifically excludes coverage for "[d]eath which is caused

wholly or partly, directly or indirectly, by disease, or bodily or mental infirmity." *Id*. (Plan §

7.03).  The KOADI Plan Summary similarly states:

> Plan benefits will be payable if you suffer an accidental bodily injury while
> working at a Participating Company . . . and, within one year of the accident,
> you die as a direct result of that injury.  Plan benefits are also payable if death
> benefits have been determined to be payable under a Workers' Compensation
> Law because the death resulted from an injury within one year of the injury.
>
> For purposes of the plan, an injury is 'accidental' only if the injury was the
> result of a sudden incident.  It does not include injury or death caused directly
> or indirectly, or wholly or partly, by . . . your physical or mental illness[.]

([#7-4] at 99).

The KMA plan, in pertinent part, pays a portion of a survivor's health-care insurance costs, where the deceased employee's death qualifies for the aforementioned death benefit under KOADI.[1]   KMA  defines an "SE7/Survivor," as "a person (1) who is the Survivor of a decedent who was an Employee at the time of death, (2) where the decedent died on or after January 1, 1993, and (3) where the decedent died as a result of an occupational accident qualifying the person for benefits under the [KOADI]." (Obstarczyk Decl.,  Ex. H). KMA plan states that an employee who is a Workers' Compensation recipient "shall be treated as an Employee for all purposes under the Plan." KMA Plan § 3.25.

Regarding the submission of claims, at the time of Mr. Hall's death, KOADI stated that a claim could be "submitted at any time after the Subscriber's death." Obstarczyk Decl., Ex. A, § 8.02.   In July 2006, Kodak issued a "Benefits Update,"  which announced a change in the claims and appeals procedures under the KOADI and KMA plans. ([#7-4] at 35-36).  The document indicates that all "routine" KOADI claims must be filed "[w]ithin one year from the date of death," and that "other" KOADI claims  must be filed "[w]ithin 60 days from the date or should have known that there is an issue, dispute, problem or other claim with respect to the plan." *Id*. at 40.   Additionally, the Benefits Update stated that all lawsuits relating to the subject plans must be filed by the earlier of either 90 days after an appealed claim is denied, or 90 days after a plan representative clearly denies a claim. *Id*. at 36.  The Benefits Update also stated that the new deadlines became effective on August 1, 2006, and that claims that

---

[1]According to Plaintiff, the two plans differ in that, KOADI is designed "to provide additional financial security for the surviving dependents of a Kodak Employee who dies as a result of an accident arising out of or in the course of his employment with Kodak," while KMA is designed "to help Participants and Dependents meet health care expenses resulting from injury or illness." Complaint [#1] ¶ ¶ 6-7.

arose prior to that date would be subject "to the earlier of the deadline that would have applied under the plan involved prior to its amendment or the deadline described in this summary." *Id*. at 36.

As noted earlier, Mr. Hall died on February 20, 2006.  On March 31, 2006, Kodak sent Plaintiff a letter summarizing the benefits available to her as a surviving spouse.  The letter did not mention the KOADI or KMA plans. ([#7-4]).  On April 14, 2006, Plaintiff, by her attorney, sent a letter to Kodak's "Plan Administrator," indicating that Mr. Hall's death was from malignant mesothelioma, caused by his exposure to asbestos while working for Kodak. ([#7-4] at 59).  The letter also noted, *inter alia*, that a Worker's Compensation case had been filed on behalf of Mr. Hall.  Additionally, the letter stated that "the 'occupational accident' provision" should provide Plaintiff with full health insurance coverage, since Mr. Hall died from occupational disease.[2][3]  Plaintiff maintains that this letter functioned as a claim for benefits under both KOADI and KMA. Complaint ¶ 20.

On June 9, 2006, Kodak representative John Littwitz ("Littwitz") sent a response, indicating that Plaintiff would have to pay a portion of her monthly health insurance premium, since,  "Occupational Accidental Death benefit coverage is not relevant to health care coverage." ([#7-4] at 62).  Littwitz stated that Plaintiff could appeal his decision by writing a letter to the Plan Administrator, within 90 days of the date of his letter.

---

[2]This apparently refers to Plaintiff's claim, discussed more below, that she is entitled to SE7/Survivor status under the KMA, because her husband died under conditions that quality for benefits under the KOADI.

[3]The letter also indicated that by law, Plaintiff was entitled to receive a higher monthly survivor income benefit than had been referenced in Kodak's March 31, 2006 letter. ([#7-4] at 60).  However, this issue is not addressed in this lawsuit.

On August 28, 2006, Plaintiff wrote to Kodak's Plan Administrator, and indicated that she was "responding to [Littwitz's] letter dated June 9, 2006." ([#7-4] at 65). Plaintiff stated that she qualified as an "SE7 survivor," since Mr. Hall had been found eligible for Worker's Compensation death benefits. In that regard, Plaintiff referred to KOADI, stating: "Number 7 of the Kodak Occupational Accidental Death Insurance Plan document states, even if conditions are not met the insurance will be paid if death benefits have been  determined to be payable under Workers Compensation." ([#7-4] at 65).

On October 5, 2006, Plaintiff's attorney wrote to the Plan Administrator, stating that Plaintiff was entitled to receive a benefit under KOADI, because Mr. Hall had been diagnosed with work-related malignant mesothelioma in June 2005, and died "less than one year after his injury was diagnosed." ([#7-4] at 70) (emphasis added).  On December 22, 2006, Littwitz responded by letter, stating that Kodak had received Plaintiff's October 5, 2006 correspondence and was reviewing the case. Complaint ¶ 23.  On March 20, 2007, Plaintiff wrote to Kodak seeking an update on her KOADI and KMA claims, and requesting copies of documents pertaining to those claims.  ([#7-4] at 79, 81-82).  Plaintiff also stated that she had never received a determination concerning her KOADI claim. ([#7-4] at 82).  On June 15, 2007, Kodak representative Kim Chesher ("Chesher") wrote to Plaintiff, indicating that Kodak had received Plaintiff's October 5, 2006, letter,  but that Plaintiff had not asserted a claim under the KOADI plan, and that her appeal was therefore not ripe for decision. Complaint ¶ 24.  The same letter indicated that Kodak was conducting research concerning Plaintiff's appeal under the KMA plan. *Id.*

On July 9, 2007,  defendant Patricia Obstarczyk ("Obstarczyk"), Kodak's  Director of Worldwide Benefits, notified Plaintiff that her "appeal was not successful." ([#7-4] at 76-77).

Obstarczyk specifically purported to address Plaintiff's claim for KMA benefits. In that regard, Obstarczyk indicated that Plaintiff's claim was received on April 18, 2006, that Kodak's denial was issued on June 9, 2006, and that Plaintiff's appeal letter "regarding [KMA] benefits was received March 22, 2007." ([#7-4] at 76). Obstarczyk indicated that she was denying Plaintiff's KMA appeal, and that her decision "conclude[d] the claims and appeal process." Obstarzyk stated, however, that such determination did not address Plaintiff's claim under the KOADI plan. ([#7-4] at 77).[4]

On August 6, 2007, Plaintiff sent a letter to Kodak addressed to both Obstarczyk and Chesher, regarding Plaintiff's claims under the KOADI and KMA plans, respectively. ([#7-4] at 79-80). Specifically, Plaintiff requested re-consideration of those claims, based on "new information just received by [Plaintiff]." *Id*. at 79. This new information was that, during a Worker's Compensation hearing held on August 1, 2007, Kodak had acknowledged liability for Mr. Hall's Worker's Compensation claims, which, Plaintiff argued, "must alter the determination made by [K]OADI and KMA[ ]. On August 22, 2007, Kodak's attorney wrote to Plaintiff on behalf of the KOADI and KMA plans. Kodak's attorney noted that, because there had been "confusion" regarding Plaintiff's applications for benefits, and because of the "new developments" identified by Plaintiff, Kodak was going to "re-open" Plaintiff's claims and conduct a review on an expedited basis. ([#7-4] at 89).

The Worker's Compensation Board subsequently issued two decisions. On August 8, 2007, the Worker's Compensation Board issued a decision awarding disability payments for the period June 29, 2005 through February 20, 2006. (Obstarczyk Aff., Ex. O). The

---

[4]The meaning of Obstarczyk's statement on this point is unclear, since Chesher had taken the position that Plaintiff did not have a pending KOADI claim.

decision indicated that Mr. Hall's "date of accident," and "date of disablement," was June 29, 2005. *Id*.[5]   As noted  earlier, Plaintiff indicates that June 2005 is when Mr. Hall was diagnosed with work-related malignant mesothelioma.  On September 7, 2007, the Workers Compensation Board issued a decision awarding Plaintiff death benefits. ([#7-4] at 86-87). For that decision, the Workers Compensation Board's decision indicated that Mr. Hall's "date of accident" was February 20, 2006, which is his date of death. ([#7-4] at 86-87).

On September 19, 2007, Chesher wrote to Plaintiff that her KOADI and KMA claims were denied upon reconsideration. ([#7-4] at 92-97).  First, Chesher indicated that Plaintiff was not entitled to KOADI benefits because Mr. Hall was not a Kodak employee at the time of his death.  Additionally, Chesher stated that even if Mr. Hall had been employed at the time of his death, he would not be eligible for KOADI benefits because he did not die within one year of his injury, since he retired in 1992 and did not die until 2006. *Id*. at 93. Moreover, Chesher indicated that KOADI did not provide benefits for death resulting from "disease or bodily infirmity."  As for the KMA plan, Chesher indicated that Plaintiff did not qualify as an "SE7/Survivor," because Mr. Hall was not an employee at the time of his death, and because he did not die from an occupational accident as defined by KOADI.[6] *Id*. at 94. Chesher further advised Plaintiff that any appeal had to be filed within sixty days from her receipt of Chesher's letter. ([#7-4] at 96) ("[T]he appeal must be filed within 60 days of your receipt of this letter.").

---

[5]Plaintiff maintains that, during the Workers Compensation disability hearing, the parties agreed that Mr. Hall's date of disablement/injury was June 29, 2005. *See*, Complaint ¶ 14]

[6]The KMA plan provided, in pertinent part, that SE7/Survivors' decedents had to have died as the result of an occupation accident that would qualify for benefits under KOADI.

By letter dated November 20, 2007, Plaintiff filed a joint appeal with the Administrators of the KOADI and KMA plans.  In the appeal, Plaintiff indicated that she had received Chesher's unfavorable decision on September 22, 2007.  According to exhibits submitted by Defendants, Kodak's Benefits Center received the appeal on November 26, 2007. ([#7-4] at 103).[7]  As to the KOADI policy, Plaintiff indicated that Mr. Hall was an employee at the time of his death, because he was a Worker's Compensation recipient. Alternatively, Plaintiff contended that Mr. Hall qualified under KOADI because he had been awarded a Worker's Compensation death benefit and had died less than one year after his injury.  In that regard, Plaintiff argued that in the Worker's Compensation proceeding, Kodak had agreed that Mr. Hall's injury occurred on June 29, 2005.  As for the KMA policy, Plaintiff reiterated that she qualifies as an SE7/Survivor, because Mr. Hall died from an occupational accident that qualifies for benefits under KOADI.

Subsequently, Defendants  delayed issuing a decision for more than a year.  In April 2008 and June 2008, Plaintiff sent written demands to the Plan Administrators for a decision, but received no response.  Complaint ¶ ¶ 30-31.  On September 4, 2008, having still not received a decision, Plaintiff commenced this action, demanding benefits under KOADI and KMA, declaratory relief, interest, costs, and attorney's fees.[8]

---

[7]Sixty days from September 22, 2007 would have been November 21, 2007.  Consequently, Plaintiff mailed the appeal on the 59th day after receiving Chesher's decision.  Plaintiff maintains, and Defendant does not challenge, that Kodak did not stamp the appeal as received until November 27the because of the intervening Thanksgiving holiday and weekend.

[8]On May 20, 2010, several months after Plaintiff commenced this action, Defendants issued a decision denying Plaintiff's appeals.  According to Defendants, the decision indicated that Plaintiff had failed to timely exhaust her administrative, that this lawsuit was untimely, and that the claims lacked merit. Def. Memo of Law [#7-2] at 7.  However, the Court is not considering that decision in ruling upon the pending 12(b)(6) motion.

Defendants filed the subject motion to dismiss the Complaint pursuant to FRCP

12(b)(6), on the following grounds: 1) Plaintiff did not timely exhaust her administrative

remedies; 2) Plaintiff did not timely commence this lawsuit under the terms of the plans; 3)

Mr. Hall was not an employee at the time of his death; 4) Mr. Hall's death was caused by

disease, not accidental injury; and 5) Mr. Hall's death occurred more than one year after his

injury.  On May 24, 2001, counsel for the parties appeared before the undersigned for oral

argument.

## DISCUSSION

The applicable legal standard for determining whether a complaint is sufficient to

survive a Rule 12(b)(6) motion is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain
> statement of the claim showing that the pleader is entitled to relief, in order to
> give the defendant fair notice of what the claim is and the grounds upon which
> it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does
> not need detailed factual allegations, a plaintiff's obligation to provide the
> grounds of his entitlement to relief requires more than labels and conclusions,
> and a formulaic recitation of the elements of a cause of action will not do.
> Factual allegations must be enough to raise a right to relief above the
> speculative level, on the assumption that all the allegations in the complaint
> are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007); *see also*,

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive

dismissal, the plaintiff must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'") (quoting *Bell Atl.*

*Corp. v. Twombly*) (footnote omitted); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)

(Indicating that *Bell Atl. Corp. v. Twombly* adopted "a flexible 'plausibility standard,' which

obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible[,]" as opposed to merely conceivable.), *reversed on other grounds, Ashcroft v. Iqbal*, 129 S.Ct.1937 (2009).   When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir. 1999).  A Plaintiff may satisfy the *Twombly* plausibility standard by pleading facts "upon information and belief," " where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted).

Defendants maintain that Plaintiff did not file a timely KOADI claim, and failed to file a timely administrative appeal for both the KOADI and KMA claims.   Additionally, Defendants contend that Plaintiff was late in filing this lawsuit, under the terms of the respective plans.   Defendants' arguments on these points are not persuasive.[9]

---

[9]For example, with regard to the filing of Plaintiff's KOADI claim, her letter dated April 14, 2006, refers to the "occupational accident provision," and Kodak understood that Plaintiff was referring to the "SE7/Survivor" benefit under the KMA, which in turn would depend upon Mr. Hall's death qualifying under the KOADI plan.  Nevertheless, Kodak argues that such letter qualified as a claim under KMA, but not KOADI. In any event, Kodak later acknowledged that there had been "confusion" concerning the exact claims that Plaintiff was previously attempting to assert, and it permitted Plaintiff to make renewed claims under both KOADI and KMA.  Moreover, although Kodak denied the renewed claims, it did not base its denial on a lack of timeliness. Consequently, it appears that Kodak waived any objection to the timeliness of the initial filing Plaintiff's administrative claims.  Additionally, it is unclear whether Plaintiff timely appealed the denial of her claims, by mailing the appeal to Kodak on the 59th day after she received the unfavorable decision.  While Defendants argue that Plaintiff's appeal had to be *received* within sixty days, they cite no authority on that point. *See*, Def. Memo of Law [#7-2] at 16.  And finally, Plaintiff was arguably timely in filing this action, since at that time, she was still awaiting a decision from the Plan Administrator concerning her appeal.  Defendants contend that when Plaintiff did not receive a decision on her appeal after sixty days, she should have assumed that the appeal was denied and commenced this lawsuit.  As to that, the July 2006 Benefits Update states that if an appeal is not decided within sixty days, the applicant "must assume that the appeal has been denied." ([#7-4] at 49).  In fact, however, Kodak was still working on the appeal, and it eventually issued a decision denying the appeal. Under Defendants' theory, though, Plaintiff's time to commence this action expired before the decision was ever issued.  Moreover, Plaintiff indicates that she made several inquiries concerning the

Nevertheless, the Court need not resolve those issues, because it finds that Plaintiff's claim must still fail, even assuming that she met all of the required deadlines and exhaustion requirements.  In that regard, even assuming, *arguendo*, that Mr. Hall qualified as an employee, by virtue of having posthumously received Workers' Compensation benefits, the nature of his death excludes coverage.  Specifically, Mr. Hall died from an occupational disease, malignant mesothelioma, fourteen years after he retired from Kodak.  The disease resulted from Mr. Hall's exposure to asbestos between 1968 and 1978.  Therefore, his death was not from a sudden accident, nor did it occur within one year after being injured "while working," as required by the KOADI plan. *See, USX Corp. v. Liberty Mut. Ins. Co.*,  444 F.3d 192, 200 (3d Cir. 2006) ("[W]e conclude that the only reasonable interpretation of the term 'bodily injury by accident' excludes the underlying claims for asbestos-related diseases."), *cert den*., 549 U.S. 888, 127 S.Ct. 296 (2006).  In making this determination, the Court must construe the subject plans' terms "in an ordinary and popular sense as would a person of average intelligence and experience." *Pepe v. Newspaper and Mail Deliveries'-Publishers' Pension Fund*, 559 F.3d 140, 147 (2d Cir. 2009) (citations omitted).  Under the plain and unambiguous language of KOADI, the Court finds as a matter of law that Mr. Hall's death from mesothelioma is not covered, regardless of whether the Court were to apply the *de novo* standard of review or the arbitrary and capricious standard of review.

Nonetheless, Plaintiff argues that Mr. Hall's death qualifies under KOADI, since he died within one year of being diagnosed with mesothelioma on June 29, 2005.  On this point, Plaintiff relies on the Workers' Compensation Board decision, which refers to Mr. Hall's

---

appeal before commencing this action, to which Defendants did not respond.

diagnosis date as his "date of accident." Obstarczyk Decl., Ex. O.  However, while such decision refers to June 29, 2005 as both the "date of accident" and "date of disablement," Mr. Hall's date of injury would appear to be the date or dates that he was exposed to asbestos while working at Kodak, which was approximately twenty-seven years before he was diagnosed.  Moreover, it is undisputed that Mr. Hall died of a disease, malignant mesothelioma, and deaths from "disease" or "bodily infirmity" are specifically excluded under KOADI.  Additionally, because Mr. Hall's death is not covered by KOADI, Plaintiff is not able to receive benefits under KMA, either.  Plaintiff argues that it would be improper for the Court to grant Defendant's motion, since there has been no opportunity for discovery. Plaintiff, though, has not explained how her claim is plausible, in light of the policy terms discussed above.

## CONCLUSION

Defendants' motion [#7] is granted, and this action is dismissed.

SO ORDERED.

Dated:      June 8, 2011
            Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge